525-0964-WC Heartland Coca-Cola Bottling Co. Appellant by James Gallen v. Illinois Workers' Compensation Comm'n et al. Brian McCallahan Appellee by Aaron Chappell Thank you. Council Gallen, you may proceed. Thank you, Your Honor. I'm James M. Gallen of Evans & Dixon. I'm representing Appellant Employer, Heartland Coca-Cola Bottling Company. The issue presented in this case is whether two of Mr. McCallahan's treating doctors, Drs. Rotman and Crane, were chosen by Heartland because Dr. Rotman performed a Section 12 examination or whether they would be chosen by Mr. McCallahan because he chose to treat with those two doctors under Section 8A. There are clearly three chains of physicians in this case. There's chain number one, the Orthopedic Institute of Southern Illinois, which was Mr. McCallahan's choice. There was Drs. Rotman and Crane, of which choice is in dispute in this appeal. And there was Dr. Bradley and Dr. Gornett, who were Mr. McCallahan's choice. The importance to this is that if Rotman and Crane were the employer's choice, then that makes Bradley and Gornett the employee's second choice and the liability for their treatment would fall upon Heartland. By contrast, if Drs. Rotman and Crane were the employee's choice because he chose to treat with them, then that makes Bradley and Gornett the third choice and therefore the respondent would not be liable for their treatment. We believe that under the facts and the law that clearly Dr. Bradley and Gornett were the third choice. The two sections involved here, Sections 8A and 12, have different provisions and separate purposes. The prefatory clause to Section 8A dealing with payment for medical bills is, quote, the employer's liability to pay for such medical services selected by the employee shall be limited to, and then it goes on with how to determine what the employer's responsibility is. This prefatory clause sets the framework for what, to what the following language appertains and applies. By contrast, Section 12 gives the right to get an examination by a surgeon or doctor, quote, for the purpose of determining the nature, extent, and probable duration of the injury received by the employee and for the purpose of ascertaining the amount of compensation that may be due the employee from time to time for disability according to the provisions of this Act. Again, separate provisions. The rights under Section 12 was something that Heartland exercised and only Heartland could have exercised that. By contrast, the rights under Section 8A could only have been exercised by the employee. He had the right to choose with whom he would treat. He could have chosen to treat with Dr. Rotman as he did and followed Dr. Rotman's recommendation to treat with Dr. Crane or once the Section 12 exam was over, which it says right at the end of the report, it's concluded, he could have chosen to go to someone else. And in fact, he did choose Dr. Rotman under his health insurance, something that there's no reason to believe that Mr. McClanahan would have thought he had to get his employer's approval to proceed for treatment under the health insurance. So, we think these are clearly, we were operating under separate provisions, separate sections, separate purposes, and therefore the choices are separate. The employer made his choice under Section 12 to get the examination by Dr. Rotman. The employee chose to get his treatment under Drs. Rotman and then Crane. You look at it when the employer scheduled its appointment under Section 12, it put its money on the line. When Mr. McClanahan chose to treat with Dr. Rotman and Dr. Crane, he put his health and his life on the line. Clearly, it was his choice. There are a couple of a few other issues that have come up in this appeal. One is whether this is a case of first impression. We believe that it is. I look to find out if there are any other Illinois cases that decide this issue of whether or not a physician who performs a Section 12 examination and subsequently treats the injured employee would be found to be to treat with them. I couldn't find any. The circuit court accepted that this was a case of first impression. And if you look at their decision, the court's decision, it's detailed. The circuit judge even quoted some legislative history that neither Mr. Chappell nor myself briefed. So, I think we have some confidence here that if there was a case on point out there, there's a good chance he would have found it. The appellee cites two cases which it claims shows that this was an issue of weight, manifest weight, the evidence rather than law. As we say on our brief, neither of them are on point. Bob Read Remodeling addressed the issue of whether or not treatment continued to be follow-up care from the emergency care, which is a separate provision, or whether at some point the emergency was over and it was just a matter of taking it going on with the first choice of physicians. That would be a fact question for the commission to decide, but it's not the issue here. The other case, absolute cleaning, was a clear issue of dispute. He said, she said. The issue was whether Dr. Hertel got the referral from the petitioner's attorney, as he believed, or whether the referral was made by Dr. Colloway, which was recorded in his records in which the claimant in that case alleged. There was also an issue whether attorney involvement made the referral a sham. But that one, we admit, yeah, that was a fact issue. But again, these are not the issues that were just before you in this case. I think the fact that Learned Council could not come up with anything on point shows that it probably isn't, and that there's, this is a case of first impression. The other issue that comes up is Council made reference to section 8.1a about the panel. Well, yes, a panel is one way the employer can fulfill its obligations, but it's not the only way. And the fact that Drs. Grotman and Crane were not part of a panel offered by the employer is irrelevant to the case. It still comes down, two separate sections of the act. One gave the right to the section 12 exam, which employer and employer only could have exercised, and the other gave the employee the right to get medical treatment, which again, only the employee could have made that choice. The employer could not have ordered him to get treatment anywhere else. So this case is really about, is there a conversion of a section 12 physician into a physician selected by the claimant, right? I think that's correct, Your Honor. Okay. So I mean, to make it simple, it's okay. Now, because there's no dispute as to, and you're saying the operative fact is removing Dr. Grotman from the payroll of Heartland, basically, through insurance, or whatever contractual relationship they have, to the quote, payroll of the injured party's third party insurer is the operative point. There's no dispute that at that time, the conversion occurred, is from your perspective, correct? Well, I think that's correct, but I think it's more than just switching payrolls. It's a function. The first function was to give an examination to determine the nature and necessity and so forth of treatment. The second function was to treat the injured worker. Okay. Yeah, I was using that not to deflect you, but one is an evaluation. The other is what I'd call therapeutic, correct? Pardon me, what was that, Your Honor? Section 12 is for exam and diagnosis. And normally you select a physician both for exam and diagnosis, but if it's your physician, it's then the third function of therapy or treatment, right? Right. The third function of actually treating them would have been the employee's choice to either go with Dr. Grotman and could refer to Dr. Crane or say, no, I want to go to someone else. Okay. So there's no dispute of fact here. Is that what you're saying? I think that's correct, Your Honor. Okay. Well, based on that, we have a standard review on this and if the facts are not in dispute, what facts do you think that the commission failed to consider or apply that would change their decision? I think the facts or the law is that they viewed this as a continuum, that the employer chose Dr. Grotman under section 12 and therefore they just looked to that as what was the first choice. We think that under the act, there actually were two choices, one under 12 that the employer can and did make for the examination for the purpose of litigation basically to determine what was owed. And then there was a second choice made by the employee that only he could have made for treatment. He had to choose with whom would he treat. And he chose Dr. Grotman. I think the obvious conclusion is Dr. Grotman and then Dr. Crane had gained his confidence. I have a question and you mentioned Bob Rudd and it relates to Bob Rudd. There, the claimant was treated by the doctor a week after the accident and the doctor performed surgery a week later. And then the claimant followed up with that doctor for four months. I don't know if it was after the accident or after surgery, but the part that I wanted to ask you about is that the court in affirming the commission's decision that that doctor was in emergency treatment and therefore didn't count against the two-doctor rule. The court in Bob Rudd says, we owe the commission deference on this issue. And I'm asking you, do we owe them increased deference based on their expertise in medical matters? Do we owe the commission that kind of deference on this issue? No, Your Honor, I don't believe you do. The difference in with Bob Rudd, the commission had to look at what was done. As you say, had he gone off on a different course that was the treatment that was done. Look at the details. Is this a continuation of the emergency care or is it something entirely new? Think of it if he originally had done one, say, did back and then came along later on and was treating the leg or something. Those were fact issues that the commission had to look at what did the doctor do and how did they relate to what he had done previously. In this case, we're looking at the law. If someone chooses to treat, the issue is when they say chosen by, does that mean chosen by under this section, under the prefatory clause says for treatment or does that mean chosen at any time for any purpose in the case? So I think that it is an interpretation of the law, not the facts as was the case in Bob Rudd. I think you can continue on. I don't think I finished. That's all I have to say. I'm ready to answer any questions. But other than that, I said my piece. Okay. Any questions from the court? Just one quick one. If this court decides, agrees with you on any of these issues that you raise here today or in your brief, what do you see as the appropriate remedy? Remand, reversal, modification, what do you think we should be doing with this? I would say reversal slash modification in the sense that you should find that doctors Bradley and Gornett and their related treatment and contrast to what the commission ordered would not be compensable. They awarded certain medical bills and they also wanted prospective treatment that I think your decision would knock both of those out and that it should clearly state that the finding of prospective treatment and the medical bills related to doctors Bradley and Gornett are reversed. So be reversed in part. So clearly substituting our opinion on the facts for the court. I would say not changing your, substituting your opinion on the facts. I think it would be substituting your interpretation of the law. Okay. Thank you. Thank you. Counsel, you'll have time and reply. Thank you. Mm-hmm. Mr. Chappell. Is it Chappell? Chappell. It depends wherever I am. I'll go by anything you call me. Very good. You may respond. Good afternoon, justices. May it please the court. Mr. Gallin, my name is Aaron Chappell on behalf of the appellee employee, Brian McClanahan. The question in this case was not whether Dr. Bradley and Dr. Gornett were Mr. McClanahan's third choice, but whether the commission's determination that they were Mr. McClanahan's second choice is against the manifest way to the evidence. The threshold issue in this case hinges upon the employee's choice of physician under Section 8A. Section 8A sets forth four specific rights for injured employees. The first, the right to choose their provider. Secondly, the right for a referral from that provider. Third, the right to a subsequent second choice of provider. And lastly, the right to a referral from a second choice of provider. Heartland muddies the various provisions and definitions of the act in order to contort the law and the facts of their argument. The issue before you is not a question about the distinction between a treating physician under Section 8A and an examiner under Section 12, but what constitutes the petitioner's choice of provider. Mr. McClanahan testified on page 990 of the transcript that he did not choose either Dr. Rotman or Dr. Crane. Choose is the operative word. Choice is an issue of fact. He stated that his first choice was the Orthopedic Institute of Southern Illinois, and his second choice was Dr. Bradley. The commission found Mr. McClanahan to be a credible witness, agreeing with this assertion, thus finding OISI to be his first choice, Dr. Bradley to be a second. Credibility is a factual issue to be down to Heartland's argument that Mr. McClanahan's statement is not credible. As you're well aware, if the evidence is conflicting or of a nature permitting inferences, a reviewing court may not substitute its judgment for that of the commission on questions of credibility, conflicting medical testimony, fact-finding, evidence bearing, or evidence weighing. So the commission heard Mr. McClanahan's testimony, found him to be credible, and found his testimony credible that he did not choose to treat with Dr. Rotman or Dr. Crane. I want to just interrupt you for a moment here and have a question. Yes, sir. Was the fact of the payor for Dr. Rotman put into evidence? We know that Rotman was retained as an examining Section 12 physician, correct? Correct, Your Honor. Okay. And was he continued to be paid by ... Well, apparently the fact is, is that he was put on the claimant's private insurances for payment, right? So Dr. Rotman stated in his report that this was not work-related, and therefore, if this gentleman needed any treatment, he should get it under his private health insurance. He even went so far as to even schedule additional appointments and testing for him on that point. I believe it's inconsequential that there's a collateral source that paid for that additional treatment or those additional testing and that additional appointment, because ultimately, had he never been sent there for a Section 12 exam, he would have never been there with Dr. Rotman. And moreover, the fact that the payor, who is his private health insurance, has no bearing on whether the employer would ultimately be responsible for that bill. Ultimately, I don't care if Dr. Rotman gets paid. He's not my doctor. He's not a treating doctor. He's not the examiner. Was his treatment reasonable or necessary? I mean, he was a Section 12 examiner. So the proper payor for both visits should honestly be whatever his appointment for a Section 12 exam is. The fact that he billed it to private health insurance for the subsequent visit is outside of the parameters of what the commission can decide that he should or shouldn't do. So Heartland maintains... But when it goes to credibility, I mean, why would you pay either directly or indirectly for a physician that you didn't choose? So here, the commission states there's a difference of choice of physician versus chosen to treat with. The commission adopted the decision of the arbitrator and they stated, quote, he may have chosen to treat with Dr. Rotman and Dr. Crane, but the doctors themselves were not his choice. They were the respondent's choice. So taking the plain language of Section 8A, the commission says whether he went to them, got any treatment for them, does not matter so much as the fact that those doctors were not chosen by him. There is no language in Section 8A or anywhere that says that if you continue to see a doctor that was chosen for you by your employer, that you have adopted them as your choice of physician under Section 8A. Does that answer your question, Your Honor? Yeah, that's a reasoning, yes. Thank you. Moving on further to state that he chose to treat with Dr. Crane or that he chose to treat with Dr. Rotman is really no different than saying that he chose to attend the Section 12 exam. That's also possible. He had the choice not to attend the Section 12 exam, but he attended it because that's the spirit of the act. Now, he chose to attend, but he didn't choose the physician. So again, Section 8 boils down to choice of physician, not choice of treatment. So I submit that Mr. McClanahan didn't believe that he had any choice in the matter at all. His employer chose Dr. Rotman, who during the IME ordered an EMG and an MRI and even scheduled a follow-up appointment, and he addressed all that in his Section 12 report, and then subsequently made a referral to Dr. Crane. As far as Mr. McClanahan was concerned, and as far as the law was concerned, this was all chosen by Heartland. Now, you may remember Heartland initially denied an EMG and MRI that were ordered by his chosen physician, Dr. Davis at the Orthopedic Institute. So before the IME with Dr. Rotman, Dr. Davis had ordered an EMG and MRI. That didn't happen. He goes to the IME, and Dr. Rotman says, yes, you need an EMG and you need an MRI. And all of a sudden, everything's being taken care of, and Dr. Rotman, who was otherwise quarterbacking this, ensures that he gets the MRI and ensures that he gets the EMG, and then refers him to Dr. Crane. So again, there's a difference between choosing the physician and just going along with a plan of care. And here, I submit that he was just essentially going along with his plan of care because it was what was going to hopefully get him better. It was going to get him the answers that he was not getting. But he testified, he didn't choose these doctors. They were chosen for him. I'd like to point out that Heartland states in their brief that Mr. McClanahan testified- The plan of care, plan of care, where is that? He chose to go along with a plan of care. Does an examining physician engage the examined person in a plan of care? A Section 12 examiner is not supposed to, no. And that's one of the things that I've seen, unfortunately, with Dr. Rotman in the past. More often than not, you'll see in a Section 12 exam, there's a paragraph at the beginning that indicates that they are not there to engage in a choice of treatment. They're not there to provide recommendations. They're not there to provide any suggestions for treatment. That doesn't happen in this report. I know it doesn't matter in this court, but I've never seen that before in Dr. Rotman's reports. He doesn't make any disclaimer that he is not engaging in this gentleman's course of treatment. So looking at his IME, usually there's a disclaimer at the beginning that says, I am not engaging in their treatment. They're here solely for a second opinion. And, you know, we do not provide them with recommendations or suggestions. Here, that doesn't occur. In fact, he does the opposite in his report by recommending additional treatment. So I think that there's, the waters are muddied by the way that this Section 12 exam was conducted. So that can go somewhat to the notion of conversion, as I started out with Mr. Gallen, conversion from a 12 to a treater. So, yeah, I understand. Yeah, the court's position is well, yeah, well taken. I don't believe that he converted to being a treater. Ultimately, a second appointment was scheduled. Now, even if we were to say he was a treater, he's saying that it has nothing to do with his compensation claim. He's saying that he's not even saying if you need treatment and I'll provide it and Dr. Crane will provide it, but it has nothing to do with work comp. In fact, we should, it's outside of your comp claim. It's not related to your injuries. We'll bill your private health insurance. If we are to even assume that those facts or that argument is correct, then ultimately they're taking themselves out of the chain of provider. They're not in conducting themselves in this case like it's a worker's compensation claim. Therefore, they're not technically providers. So the same, a similar argument could be made that Dr. Crane and Dr. Rotman aren't even a choice of provider for anybody because they say this has nothing to do with work comp. I want to point out that Heartland States in their brief that Mr. McClanahan testified a trial that he adopted Dr. Crane and his treating provider. That was noted on page 17 of their but this is disingenuous for them to cite that in the record based on Mr. McClanahan's actual testimony and the attorney's objections on pages 1005 through 1006 where there was an objection posed that the question required the witness to draw a legal conclusion and the arbitrator required Heartland's attorney to rephrase that question. And the question that was asked was, so you eventually saw Dr. Crane, correct? And the answer was, yes, sir. You want to make sure that the record was clear on that. Heartland points to the fact that the treatment from Dr. Rotman and Dr. Crane were billed to a collateral source. But as I said, even if we were to accept that, that they accepted private health insurance, they then took themselves out of the comp case by saying that this has nothing to do with work comp, or at least that's what the direction of the doctor who quarterbacked this, Dr. Rotman said. So if they take themselves out of the comp claim, then they're technically not anyone's choice. So sending him to an IME who then scheduled subsequent studies is otherwise a clever way to undermine Section 8A and the employee's right to choose. We talked about legislative intent earlier, but if this is a route that employers have where they can schedule a Section 12 exam and an examiner like Dr. Rotman can say, you need these studies, we'll go ahead and get them scheduled. If that automatically makes him a treater, then it completely undermines Section 8A. Again, it's not the choice of treatment, but the plain language of the law is the choice of the provider. Let me ask you this. Is there any consideration, was there any consideration by the commission, the arbitrator, trial court with regard to Mr. McClanahan's understanding of his rights with regard to choosing doctors and how many choices he had? And should we concern ourselves with that issue? The way that it was posed as a direct question to him in his testimony was, did you choose Dr. Rotman, to which he responded, no. Did you choose Dr. Crane? And he said, no. There was no line of questioning of, do you understand your rights under the law? Do you understand potential questions about conversion or adopting treatment? None of that was asked. The plain question was, did you choose to treat with this doctor? And he said, no. Is there any reason for us to concern ourselves? I mean, is there any standard or legal precedent with regard to the person knowing what their rights are in that regard? I don't know, Your Honor. I'll be frank. I don't know if there is any legal bearing on whether they have an understanding of that right. I do think that it is something that should be aware of them, honestly, by a Section 12 examiner. Our clients frequently tell us when they get an exam notice saying, I have to go see this doctor. Sometimes they think that it's a doctor that we've set up for them. So here, what was clear was that he didn't know that he had a choice because he went along with their treatment. I think that can be inferred from the fact that it was asked, did you choose these doctors? And he said, no. I think that if prior to our representation of him, if it had been posed to him, you have the choice, would you choose these doctors? He would probably want a different opinion. Because again, these doctors said, well, at least Dr. Rotman said, I don't think your condition is work-related. You should your private health insurance. So again, assuming that to be the fact, then I think that that poses I think an ethical obligation that exists for the Section 12 examiners to let these people know, I'm not engaged in your treatment. I am not a choice. You have now, you could choose to treat with me in the future. I do see that some doctors will put that in their reports, but that isn't... Why would we put that burden on the doctor? Wouldn't it make more sense to put that burden on the employer? I don't disagree with that. I'm just talking about, and this is off this particular case, but if you're going to try to reform for notice purposes, the burden should be on the person scheduling under the Act, which would be the employer, a Section 12, so that when that comes in, assuming they're not that time represented, which I assume is the case here, am I correct? Yes, your notice was given. Okay. To inform the claimant in this instance, the injured worker, that you're hereby directed to see Dr. So-and-so set up a schedule appointment for the purposes of whatever those under the Act are stated to be the purposes that the right the employer has. Is there anything in those notices that does that? Not at least as a notice that I saw that was in there. Well, it doesn't have to be a notice, but I mean, in the information coming to the alleged injured worker, this is where you're supposed to be and why. Your Honor, may I clarify, is this, is your question more generally speaking, or is it specific to this case? No, it's general because I think Justice Barbera's brought up that nature and the extent of information that is given to the person being examined. Yeah. I certainly don't disagree with you that maybe that burden should be on whoever's noticing the exam. Generally, I feel like that's usually accomplished in a lot of Section 12 reports, where they'll say this is, you know, I'm not engaging in your medical treatment and there's a disclaimer. But I do think if there's an obligation, you know, while the doctors are availing themselves to our system, they are outside of it. You know, they're not actors. They are not, they're not actually, you know, a party. So if there is somebody who bears that responsibility, it's whoever I think is scheduling the Section 12 exam. In that instance, that would even fall on my part because Section 12 exam allows me to schedule an exam. So let's say I schedule an exam for a client. I think that I bear the burden of notifying them that this is not a choice if you choose to treat with them, you know, what those parameters are. So I think the scheduler of the Section 12 may bear that burden. Okay, thank you. I believe I may be out of time, but assuming that are... Well, you are, but I think I've interrupted. So are there any other, would you want to wrap up quickly? Unless there are any other questions for me, whether Petitioner exceeded his choice of physicians or failed to prove his entitlement to the award, award of medical benefits was a question of fact for the Commission to decide. In light of the evidence relied upon by the Commission, it's clear that the opposite conclusion is not apparent. Therefore, the decision of the Commission should be affirmed. Not seeing any questions for me. I thank you for your time, Your Honors. Thank you. But let's ask the Court here. Are there any questions, further questions for counsel? Okay. Well, thank you, counsel. Thank you, Justice. Mr. Gallin, you may reply. Well, first of all, Mr. Chappell said I could get a Section 12 examination. Well, Section 12 says if requested by the employer. So Section 12 is something that is a right given to the employer, not to the injured workers attorney. He can get his own examination, but he doesn't need Section 12 to compel. As far as the choices, there is testimony on page 990 of the record. Was Dr. Rotman your choice? No, sir. Was Dr. Crane your choice? No, sir. Then on page 1006, he was asked, and you adopted Dr. Crane as your treating doctor, correct? Yes. Then going on to page 1008, again, talking about Dr. Crane, and you stayed with him, correct? You stayed and continued to treat with him, correct? Yes, sir. So did you agree to be treated by and you, in fact, sought treatment with Dr. Crane, correct? Answer, I'm sorry, can you repeat the question? Yes. You did agree that Dr. Crane would treat you, correct? And then there was an objection. The arbitrary said, I mean, he underwent the surgery by Dr. Crane, right? Mr. Rich, certainly. Arbitrator Arbushon, so if he didn't agree to it, he wouldn't have undergone the surgery, so I'm going to overrule that one, go ahead. And it appears that they never got back to answering the question, but I think the answer was pretty well implied by the arbitrator's comments that, yes, he did agree to get the treatment. When you started that line of quotes, you asked if there, you said that when he was asked if he had adopted Dr. Crane as his treating doctor, the claimant responded, yes. There was an immediate objection to that, correct? You mentioned the objection later in the testimony, but there was also an immediate objection upon that question and answer. And I don't think there was ever an answer to it, that they just got talking back and forth and the arbitrator said, don't talk to each other, talk to me. So, I don't think she ever ruled to say any objection. Mr. Gallin, do you think it matters at all that Dr. Rotman said this is unrelated to the work you're looking at? He was told, and if he was at least at that point accepting it to the point, I put it under my group insurance. You mean the claimant? The claimant, yes. They're trying to figure out what did he understand? Well, I don't think anyone would understand that he was obligated to follow the employer's doctor if he's going with his own insurance. He has certain rights under insurance. He wouldn't go for something that's under a health insurance and ask his employer, to what doctor do I have to go? So, well, I think he- You've chosen some connectivity here. Well, I think the people know they have choices, but the only significance of that is it makes, if anything, he would be more likely to realize, hey, I can go anywhere I want now. And he chose Rotman and Grain. So, legally, the fact that Dr. Rotman said, this is unrelated, but the plaintiff, let's assume, excuse me, plaintiff, claimant, claimant, as you say, chose, he chose then to continue treatment for, I mean, we could blend it all and say an unrelated issue. Well, except that he- I mean, that's a concern of mine. I'm just- He did continue to claim that this was related. He did take that up before the commission, and ultimately the commission ruled- Well, that was later though, wasn't it? I mean, I don't know that every time he went to the doctor, to Dr. Rotman, I don't know if he said, I continue to believe this is related. I'm guessing. I'm guessing. I don't know that this is true, but the doctor- Excuse me. I'll just pose my question, and then I'll cede the floor to you, counsel. Sound okay? Yeah, I'm sorry. Yes, go ahead. That the doctor, he saw something, perhaps, that the doctor says it's not related, and he goes back to him to fix this unrelated thing. Does it- I don't know if it matters, but I do know that 8 says that the employer's liable for the treatment that would cure the effects of the accidental injury, and to the extent this doctor saying what you have isn't related to your injury, to your accident. You finished? Okay. Yes. They do have to cover the things related to the injury, subject to the limitations of two chains of physicians, and in this case, he clearly, when he got to Bradley and Gornet, that was clearly a third chain, so the question comes down by adopting, by choosing to treat with Drs. Rotman and then Crane, was it his choice? And our position, I think it's supported by the law and the testimony, is yes, he could have gone to someone else when it came to a matter of treatment. That's a separate section. It gives the employee the right. He chose. He could have walked out, could have said somebody else, but he chose to go on with him. And remember, Dr. Crane did surgery. When you have someone do surgery on your back, you're putting a lot of confidence in them. You wouldn't just let someone else, if you didn't have to, tell you, yeah, you have to do this. So yeah, I think he did choose and put a lot of confidence in these two doctors. I hope that answers your question. If not, I'll try again. Thanks, counsel. Okay. Thank you. Okay. Your time is up, Mr. Gallin, unless you want to summarize real briefly. Well, just like we've been saying all along, I do believe that he had made the choice to treat with Drs. Rotman and Crane. They were the second choice. And then that makes the other one the third choice. So I thank you for your time and your consideration. Okay. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.